Filed 11/21/13  P. v. Brown CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

### (Siskiyou)

----

| | |
|---|---|
| THE PEOPLE, | C070909 |
| Plaintiff and Respondent, | (Super. Ct. Nos. MC YK CR BF 11-733, |
| v. | MC YK CR F 11-1658) |
| RODGER ARNOLD BROWN, | |
| Defendant and Appellant. | |

This case comes to us pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *People v. Kelly* (2006) 40 Cal.4th 106, 110 (*Kelly*).  Having reviewed the record as required by *Wende*, we note four errors in the second amended abstract of judgment, which we will order corrected.  In all other respects, we affirm the judgment.

We provide the following brief description of the facts and procedural history of the case.  (*Kelly*, *supra*, 40 Cal.4th at p. 124.)

### Siskiyou County Case No. 11-733

In the spring of 2011, law enforcement responded to three reports of domestic violence at defendant's home.  During one event, defendant and his girlfriend C.T. fought

1

after she refused to let him use their food stamps to buy chips and salsa.  Defendant kicked C.T. and struck her with his hands.  When law enforcement arrived at the home, C.T. came to the door with her hair covering her face and denied there had been a physical assault.  No arrest was made and the deputies left.

Shortly after the deputies left, C.T. was in the bathroom looking at her face in the mirror when defendant came up behind her and punched her in the back of her head, driving her into the vanity and causing her to fall into the bathtub.  Defendant then jumped on top of C.T. inside the bathtub, and began to beat her.  Defendant bit C.T.'s lip, choked her, and said "die bitch die."  The assault ended when a neighbor came to the door and opened it.  Defendant then left the house.

Several days later defendant and C.T. argued about sleeping arrangements that night—defendant wanted to sleep on the couch and C.T. wanted him to come back to bed.  As they argued, C.T. walked outside toward her car to go get some cigarettes; before she could make it out of the yard, defendant hit her from behind.  Defendant hit C.T. so hard she fell to the ground and he began to beat her with his hands and fists.  Somehow they got back inside the house where defendant threw C.T. to the kitchen floor and continued to beat her:  punching, hitting, and kicking her in the head, face, shoulders, and back.

Law enforcement was called; when they arrived, the deputies found C.T. in front of the house crying, her right eye bruised and beginning to swell.  She also had a "hole punched in her lip" by a tooth from the prior assault.  C.T. was reticent to tell them what happened because she was afraid of defendant.  She told the deputies that defendant belonged to a "White Power" group and had warned her she would suffer "clear repercussions" if she ever cooperated with law enforcement and she believed him.  The deputies found defendant hiding in a doghouse in the back yard.  They took him into custody.

Deputies later interviewed C.T.'s 14-year-old son J.T., who indicated he was present when defendant and C.T. argued about sleeping arrangements. J.T. remembered defendant telling C.T. if she left, he would not be there when she got back and he would burn the house down. J.T. described defendant following C.T. out to her car and knocking her down. J.T. put his shoes on to help his mother but before he could get outside, defendant was already bringing C.T. back inside. J.T. put his hands on defendant's chest and told him to "stop" and defendant punched him twice in the face with a closed fist.

Defendant was later held to answer to the following charges: premeditated, attempted murder (Pen. Code, §§ 664 & 187, subd. (a)—count 1),[1] two counts of torture (§ 206—counts 2 & 4), aggravated mayhem (§ 205—count 3), mayhem (§ 203—count 5), three counts of corporal injury of a cohabitant resulting in trauma (§ 273.5, subd. (a)—counts 6, 8 & 10), three counts of assault by means likely to produce great bodily injury (§ 245, subd. (a)(1)—counts 7, 9 & 11), endangering the health or life of a child (§ 273a, subd. (a)—count 12), inflicting cruel and inhuman corporal punishment upon a child (§ 273d, subd. (a)—count 13), threatening a witness using force and violence (§ 140, subd. (a)—count 14), making criminal threats (§ 422—count 15), and street terrorism (§ 186.22, subd. (a)—count 16).

The People also alleged that the crimes alleged in counts 1 through 11 and 14 were committed in furtherance of a gang. (§ 186.22, subd. (b)(1)(C).) They further alleged that defendant inflicted great bodily injury in violation of section 12022.7, subdivision (e) when the crimes alleged in counts 1 through 3, 5 through 10, 11, and 14 were committed. Appended to counts 6 and 8 through 10, were allegations that defendant was previously convicted of a domestic violence offense. (§ 273.5, subd. (e)(1).) As to all counts, the

---

[1] Undesignated statutory references are to the Penal Code.

People alleged defendant was previously convicted of a serious felony (i.e., first degree burglary in Super. Ct. Trinity County, 2003, No. 03F119A) under section 667, subdivision (a)(1), which also qualified as a strike under sections 667, subdivision (e) and 1170.12, subdivision (c), and previously served two prison terms (§ 667.5, subd. (b)).

On August 23, 2011, defendant pleaded no contest to three counts of inflicting corporal injury on a cohabitant (counts 6, 8 &10), threatening a witness (a misdemeanor, count 14), and street terrorism (count 16, as a misdemeanor). He also admitted previously being convicted of a serious felony and a strike, previously serving a term in prison, and previously being convicted on a charge of domestic violence. In exchange for his plea, the People agreed to a sentencing lid of 15 years in state prison, suspended, with 365 days in county jail. The remaining charges and allegations were conditionally dismissed in light of the plea and defendant was released from custody on a *Cruz*[2] waiver.

On September 3, 2011, a probation officer made an unannounced visit to defendant's mother's residence, where he had been ordered to stay pending sentencing. Defendant's urine was collected and tested positive for oxycodone. Defendant admitted he "ate" an "oxy" earlier that day, thereby violating the terms of his *Cruz* waiver. Two more tests were done in September, each came back negative, but the probation officer recommended a *Cruz* waiver hearing before the probation presentence report was submitted. At that hearing, on September 27, 2011, the trial court found defendant violated the terms of the *Cruz* waiver and the People announced their intent to argue the 15-year prison sentence should be imposed.

---

[2] *People v. Cruz* (1988) 44 Cal.3d 1247. Defendant's *Cruz* waiver included conditions that he submit to search and seizure and testing and not consume alcohol or drugs.

*Siskiyou County Case No. 11-1658*

On September 15, 2011, law enforcement responded to a report that defendant had shoved a female relative, T.H., to the ground. When officers arrived at the scene, defendant's grandmother reported that defendant came to her house angry. He argued with her daughter, T.H., and shoved T.H. to the ground. Then defendant and T.H. left the house together, walking toward defendant's house. The officers went to defendant's house and spoke to T.H. who said they were just "messing around."

On October 7, 2011, law enforcement received another call from defendant's grandmother. She reported that defendant assaulted T.H. again, shoving her in the shoulders and knocking her to the concrete and calling her "filthy names." As his grandmother was calling law enforcement, defendant kept saying, " 'Grandma don't call the sheriff, somebody talk to her. I'm automatically going to get 15 years.' "

Two weeks later, new charges were filed against defendant in Siskiyou County case No. 11-1658. Specifically, defendant was charged with two counts of dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1)—counts 1 & 3), making criminal threats (§ 422—count 2), inducing false testimony (§ 137, subd. (c)—count 4), and two counts of battery (§ 242—counts 5 & 6). Appended to count 3 was the allegation that defendant used force to dissuade a witness who was ready to give material information regarding the charge alleged in count 2. (§§ 136.1, subd. (c)(1) & 1170.15.) The People further alleged defendant had three prior strike convictions (including two of his convictions in case No. 11-733) and served two prior prison terms.

On November 1, 2011, defendant appeared before the trial court and admitted a second *Cruz* waiver violation. Defendant also pleaded no contest to two counts of dissuading a witness (counts 1 & 3), one count of making criminal threats (count 2), one count of inducing false testimony (count 4), and two counts of battery (counts 5 & 6) in case No. 11-1658. Defendant admitted he used force to dissuade a witness, and was

5

previously convicted of first degree burglary in Trinity County on December 10, 2003, a qualifying strike offense.[3]  In exchange for defendant's plea, the People agreed to a stipulated term of 10 years eight months in state prison, to be served concurrent to the 15-year prison sentence that would be imposed in case No. 11-733.  The remaining allegations were to be stricken in light of the plea.

### Subsequent Motions

At defendant's request, a *Marsden*[4] hearing was held on December 15, 2011; defendant's request was denied.  A second *Marsden* hearing was held on December 30, 2011.  At that hearing, the trial court found communication between defendant and counsel had broken down.  The court granted defendant's request and new counsel was appointed.

With new counsel, defendant moved to withdraw his plea in case No. 11-733.  The trial court heard argument, reviewed the transcript from the preliminary hearing, and took defendant's written assertions regarding his prior attorney's conduct as evidence.  The court ultimately denied defendant's motion on March 16, 2012.

### Judgment and Sentence

Defendant was sentenced in accordance with his plea agreements.  In case No. 11-733, the trial court chose count 6 (§ 273.5, subd. (a)—inflicting corporal injury on a cohabitant) as the base term and imposed the upper term of five years.  The court then imposed a consecutive term of five years for inflicting great bodily injury (§ 12022.7, subd. (e)), and another consecutive five-year term for defendant's prior serious felony conviction (§ 667, subd. (a)(1)) for an aggregate term of 15 years in state prison.  The court then imposed five years each for the remaining domestic violence crimes and their

---

[3]  This is the same strike conviction defendant admitted in case No. 11-733.

[4]  *People v. Marsden* (1970) 2 Cal.3d 118.

6

enhancements and ordered those terms to be served concurrent to the previously imposed 15 years.[5]

In case No. 11-1658, the trial court imposed an aggregate term of 10 years eight months in state prison to be served concurrent to the prison term imposed in case No. 11-733: four years for dissuading a witness with force (§ 136.1, subds. (b)(1) & (c)(1)), eight months for the second charge of dissuading a witness (§ 136.1, subd. (b)(1)), and eight months for making criminal threats (§ 422). The term of five years four months was then doubled pursuant to sections 667, subdivision (e) and 1170.12, subdivision (c).

The trial court ordered defendant to pay various fines and fees. The court also awarded defendant 284 days of custody credit in case No. 11-733 (247 actual and 37 conduct) and another 223 days of custody credit in case No. 11-1658 (149 actual and 74 conduct). (§ 2933.)

Sentence was pronounced on March 16, 2012. Defendant appealed with a certificate of probable cause.

### *Fares* **Letter**

On January 9, 2013, defendant's appellate counsel sent a lengthy *Fares*[6] letter to the trial court.

On May 3, 2013, this court received minutes from the trial court regarding a "sentencing modification" hearing that took place on April 25, 2013. The minutes indicate the trial court affirmed a tentative ruling made on March 22, 2013, and that ruling was in regard to a revised sentence.

---

[5] The court imposed an additional 180 days for a misdemeanor gang offense, but that term was subsequently removed because it violated the plea agreement.

[6] *People v. Fares* (1993) 16 Cal.App.4th 954.

On May 20, 2013, this court received the minutes from the March 22, 2013 hearing, along with another copy of the minutes from the April 25, 2013 hearing, and an amended abstract of judgment. The amended abstract, however, was already on file with this court and did not reflect the changes noted in the trial court's minutes from the hearings on March 22 and April 25, 2013.

On June 20, 2013, this court received a second amended abstract of judgment, filed in the trial court on April 25, 2013.

We appointed counsel to represent defendant on appeal. Counsel filed an opening brief that sets forth the facts of the case and requests this court to review the record and determine whether there are any arguable issues on appeal. (*Wende*, *supra*, 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief. More than 30 days have elapsed, and we have received no communication from defendant. Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

We note four errors in the second amended abstract of judgment:

First, the abstract indicates there were two enhancements imposed pursuant to section 667, subdivision (a)(1). Defendant made no admissions pursuant to section 667, subdivision (a)(1) in case No. 11-1658 and he admitted only to being previously convicted of one serious felony in case No. 11-733, though that same enhancement was appended to counts 6 and 10. Accordingly, the second enhancement, which is identified as "stayed," should be removed from the abstract. (*People v. Tassell* (1984) 36 Cal.3d 77, 90, overruled on another ground in *People v. Williams* (2004) 34 Cal.4th 397, 400 [enhancements for prior convictions do not attach to individual counts].)

8

Second, there is a math error in the calculation of custody credits. In case No. 11-733, the abstract indicates defendant was awarded 98 actual days and 14 conduct days pursuant to section 2933.1. The total number of days should therefore be 112, not 284.

Third, the court's revised sentence of April 25, 2013, ordered that presentence custody in case No. 11-1658 was to be "served at 15%" with 149 actual days. Thus, the correct calculation of conduct days should be 22 days—not 74 as indicated on the second amended abstract of judgment—for a correct total of 171 days.

And, fourth, in identifying defendant's convictions, the abstract should be corrected to show that the terms for defendant's convictions in case No. 11-1658 are all to be served concurrently.

## DISPOSITION

The judgment is affirmed. The trial court is directed to correct the second amended abstract of judgment in accordance with this opinion and forward a certified copy of the corrected abstract to the Department of Corrections and Rehabilitation.


                                                    BUTZ            , J.


We concur:


        RAYE            , P. J.


        HULL            , J.


9